**KAUFMAN | DOLOWICH**

Kaufman Dolowich LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797

Telephone: 516.681.1100

www.kaufmandolowich.com

**Adam M. Marshall**
amarshall@kaufmandolowich.com

January 19, 2026

**VIA ECF**
Honorable Dora L. Irizarry, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Rutledge v. Schwartz Sladkus Reich Greenberg Atlas LLP, et al.*
              Case No. 1:24-cv-4188 (DLI)(PCG)

Dear Judge Irizarry:

This firm represents Defendant Schwartz Sladkus Reich Greenberg Atlas LLP and Andrea Trochez (the "Attorney Defendants") in the above matter. We respectfully submit this letter in response to Plaintiff's sur-reply letter filed on December 30, 2025 (the "Pl. Ltr.") (Doc. 44).[1]

The Second Department's decision in Calixto v. A. Balsamo & Rosenblatt, P.C., 2025 WL 3466767 (2d Dep't Dec. 3, 2025) is inapposite because, as set forth below, Calixto concerned misrepresentations of objective facts that required the dismissal of the underlying landlord-tenant proceeding under settled law, whereas Plaintiff's claims in this action rest on Plaintiff's interpretation of a newly enacted New York statute – an interpretation that has not been adopted by any New York State appellate court.

In Calixto, the attorney defendants (as counsel for the landlord) filed a nonpayment petition in September 2017 alleging, *inter alia*, that the plaintiff's apartment was subject to the Rent Stabilization Law; that the building was duly registered with the New York State Division of Housing and Community Renewal ("DHCR"); and that the building was a registered multiple dwelling. Id. at *1. In reality, "the building was not registered with the New York City Department of Housing Preservation and Development ["HPD"] and had not been registered with the New York State Division of Homes and Community Renewal since at least 1984." Id. Those facts – which were public record – led the civil court to grant the plaintiff's subsequent motion to dismiss the nonpayment proceeding "on the ground that the building was not registered and, thus, the Multiple Dwelling Law prohibited [the landlord] from collecting any rent from the plaintiff." Id. That ruling was consistent with longstanding precedent. See e.g., Shamir v. Perry, 2004 WL 2035004, at *2 (Sup. Ct. Kings Co. Jun. 23, 2004) ("The case law is rather uniform in denying the landlord the collection of rent from the tenant of an illegal apartment. An owner's failure to register a premises as a multiple dwelling precludes him from maintaining a summary proceeding predicated upon nonpayment of rent.") (collecting cases).

---

[1] I apologize for the delay in filing this letter. I mistakenly thought the Court's January 9, 2026 order directed the Attorney Defendants to file their response to Plaintiff's sur-reply by January 23, rather than January 16, and only realized my error this afternoon. The Attorney Defendants have no objection to Plaintiff taking additional time for her response.

A building is either registered with the DHCR and HPD or it is not; those are inherently objective facts about which there is no room for debate. And the legal consequences for failing to register were well known when the nonpayment proceeding at issue in Calixto was commenced. Indeed, the attorney defendants in Calixto expressly *conceded* that they *knew* the proceeding was doomed and that their client had "completely fabricated what [the plaintiff] owed to the [landlord]" when they read the plaintiff's motion to dismiss. (Calixto Record on Appeal at 383, ¶ 6).[2] They opposed the motion anyway. (Id. at ¶¶ 7-8).

By contrast, whether "the Attorney Defendants in this action sued [Plaintiff] for a time-barred debt" and "sued others for time-barred medical debts," (Pl. Ltr at 1), is unknowable in the absence of controlling authority supporting Plaintiff's reading of CPLR § 213-d.[3] No appellate court has applied CPLR § 213-d retroactively. (Doc. 28-3 at 14). If anything, New York's Appellate Division, Fourth Department already rejected that interpretation. (Id.; Doc. 43 at 3-4). Moreover, no New York court (at any level) has held that a claim for breach of a *non-patient's* obligations under a nursing home admission agreement is an action on a "medical debt." (Doc. 28-3 at 15-16; Doc. 43 at 5). That statutory term is undefined. (Doc. 28-3 at 15).

It follows that the Attorney Defendants could not have deceptively or even negligently sought to collect on a time-barred debt because the limitations period was at worst debatable.

The First Department's decision in Peck v. Milbank LLP, 242 A.D.3d 610 (1st Dep't Oct. 23, 2025), issued after the Attorney Defendants' motion was fully briefed, is right on point:

> The cause of action for violation of Judiciary Law § 487 fails to allege any cognizable acts of deception. Plaintiffs alleged that defendants' commencement and pursuit of enforcement litigation on certain notes was knowingly false and misleading insofar as defendants knew that the enforcement litigation was contrary to the decedent noteholder's estate plan. Even if defendants indirectly controlled the note litigation, the alleged misconduct – pursuing litigation in (possible) violation of the terms of a trust – is not the type of intentional misrepresentation addressed by Judiciary Law § 487. As this Court has previously recognized, it is not clear what the trust provision means or whether it was even operative before the probate of the will. **Even if the individual defendant, attorney Georgina J. Slade, Esq., at some point subjectively believed that the trust provision barred enforcement of the notes, she was entitled to change her mind or to press a different, also-reasonable interpretation in zealously advocating for her client, even if that interpretation might ultimately be found to be without merit.**

Id. at 611 (citing Bill Birds, Inc. v. Stein Law Firm, P.C., 35 N.Y.3d 173, 180 (N.Y. 2020)) (internal citation omitted) (emphasis added).

---

[2] https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=2SK36XlqAqRXO550TkYeSw==.

[3] The Attorney Defendants maintain that their client's claims in the underlying action are timely even if the shorter three-year statute of limitations applies. (Doc. 28-3 at 16-17).

Consistent with Bill Birds and Peck, all the Attorney Defendants have done in the underlying collection action is advance a reasonable interpretation of an unsettled statute. It makes no difference whether Plaintiff's counsel put the Attorney Defendants on "notice" of his opposing view, (Pl. Ltr. at 1), since Plaintiff's counsel does not dictate the law. No attorney does.

Lastly, Plaintiff's reliance on Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP, 2025 WL 871637 (S.D.N.Y. Mar. 20, 2025) is misplaced. (See Pl. Ltr. at 2). The defendant in Crespo allegedly told the plaintiff that the "only way" plaintiff could secure the release of a restrained bank account full of exempt funds was to sign a conditional release making an immediate payment on the debt, when, in fact, New York's Exempt Income Protection Act created an express statutory mechanism for making exemption claims and obtaining the release of funds without payment. Id. at *2, 6. Thus, the court reasoned that plaintiff had a viable claim for gross negligence under the theory that defendant "intentionally lied to [plaintiff] about his statutory rights[.]" Id. at *9.

Nothing remotely similar is alleged in this action. The Attorney Defendants did not and could not "intentionally misrepresent[] the statute of limitations" to Plaintiff because, as discussed above, the law is unsettled.[4]

We thank the Court for its consideration.

Respectfully,
Kaufman Dolowich LLP

By: _____
Adam M. Marshall, Esq.

cc:    All Counsel via ECF

---

[4] It is worth noting that Plaintiff *still* has not moved for summary judgment on statute of limitations grounds in the underlying action (where she is represented by the same counsel), as one would expect if Plaintiff's interpretation of CPLR § 213-d were unassailable.