**2026 WL 2431867 (N.Y.Sup.) (Trial Order)**
Supreme Court of New York.
New York County

Sumeer SATHI, Petitioner,
v.
NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, Adrienne A. Harris, as Superintendent of the New York State Department of Financial Services, Maximus, Inc., Emblemhealth Plan Inc., and Emblemhealth Inc., Respondents.

No. 158537/2025.
August 11, 2026.

***1** IAS Part 44
Motion Seq.: #002
[Referred to as 002 and 002A]

**Decision, Order, and Judgment**

Present: Hon. Ronald Castorina, Jr., Justice.

**[CASTORINA, J.]**

### *I. Statement Pursuant to CPLR § 2219 [a]*

In accordance with *CPLR § 2219 [a]*, the court recites that the following papers, all filed electronically by NYSCEF, were read upon the petition of Sumeer Sathi for relief pursuant to *CPLR Article 78* and for declaratory relief (Motion Sequence No. 002), and upon the cross-motion of respondents New York State Department of Financial Services and Adrienne A. Harris, as Superintendent of Financial Services (together, the "State Respondents"), to dismiss the petition (Motion Sequence No. 002A): the Notice of Petition, dated July 3, 2025 (NY St Cts Filing [NYSCEF] Doc No. 5), and the Verified Petition, verified May 30, 2025 (NY St Cts Filing [NYSCEF] Doc No.1), together with the exhibits annexed thereto (NY St Cts Filing [NYSCEF] Doc Nos. 2-4); the Notice of Cross-Motion to Dismiss the Petition, dated August 21, 2025 (NY St Cts Filing [NYSCEF] Doc No. 22); the Affirmation of Laura Dillon, dated August 21, 2025, with exhibit RX-1 annexed thereto (NY St Cts Filing [NYSCEF] Doc Nos. 23-24); the Affirmation of Stephanie Costa, dated August 21, 2025, with exhibits RX-2 through RX-9 annexed thereto (NY St Cts Filing [NYSCEF] Doc Nos. 25-32); the State Respondents' Memorandum of Law in Support of Their Cross-Motion to Dismiss the Petition (NY St Cts Filing [NYSCEF] Doc No. 33); Petitioner's Memorandum of Law in Opposition to the Cross-Motion to Dismiss and in Further Support of the Petition (NY St Cts Filing [NYSCEF] Doc No. 35); the Affirmation of David Yeger in Opposition to the Cross-Motion to Dismiss and in Further Support of the Petition, dated September 22, 2025, with Exhibits 4 through 7 annexed thereto (NY St Cts Filing [NYSCEF] Doc Nos. 36-40); the Supplemental Affirmation of Laura Dillon, dated October 29, 2025 (NY St Cts Filing [NYSCEF] Doc No. 41); and the State Respondents' Reply Memorandum of Law in Support of Their Cross-Motion to Dismiss the Petition (NY St Cts Filing [NYSCEF] Doc No. 42).

The motion and cross-motion were fully submitted upon the filing of the State Respondents' reply papers on October 31, 2025. The proceeding was previously assigned to another Justice of this court, before whom the foregoing papers were briefed and submitted, but by whom no determination was rendered. By Administrative Order of the Chief Administrative Judge of the Courts (Zayas, C.A.J.), AO/150/2026, dated June 26, 2026, and issued upon consultation with and by agreement of the Presiding

Justices of the Appellate Division, First and Second Judicial Departments, the undersigned was assigned from Supreme Court, Richmond County, to Supreme Court, New York County, Civil Term, effective July 1, 2026, to remain in effect until and including December 31, 2026, subject to further order. This matter was thereupon transferred to the inventory of the undersigned on July 1, 2026, and the undersigned, having reviewed the record in its entirety, now determines the fully submitted motion and cross-motion.

***2** Upon the foregoing papers, and for the reasons elaborated below, the cross-motion of the State Respondents is granted in its entirety, the petition is denied, and the proceeding is dismissed, with a declaration entered in the State Respondents' favor as set forth in the decretal paragraphs appended hereto.

### *II. Findings of Fact*

In this hybrid proceeding pursuant to *CPLR Article 78* and for declaratory relief, petitioner Sumeer Sathi, M.D. ("Petitioner" or "Dr. Sathi"), a physician duly licensed to practice medicine in the State of New York who furnishes out-of-network, "on call" neurosurgical services in hospitals situated within this State, assails the refusal of the administrative apparatus erected under *Article 6 of the Financial Services Law* to entertain, upon the merits, his application for independent dispute resolution of a payment controversy with a patient's health care plan. (NY St Cts Filing [NYSCEF] Doc No. 1). The gravamen of the petition is that the respondents unlawfully gave retroactive operation to a legislative enactment prescribing a three-year temporal limit upon the submission of such disputes. (*see id*).

The statutory architecture merits recitation at the threshold. On March 31, 2014, as Part H of that year's budget legislation (the "2014 Budget Act"), the Legislature enacted *Article 6 of the Financial Services Law* to shield patients from the unanticipated financial consequences of receiving medical services from out-of-network providers in the form of "surprise" bills and bills for emergency services. (*Financial Services Law § 601)* The Legislature directed the Superintendent of Financial Services to establish a dispute resolution process by which a dispute concerning a bill for emergency services or a surprise bill may be resolved, and to promulgate regulations establishing standards for that process (*see id*), which the Department of Financial Services ("DFS") accomplished through the adoption of *23 NYCRR part 400*. (*23 NYCRR § 400.0*). *Article 6* did not take effect immediately; rather, the Legislature deferred its operation for one year, until March 31, 2015, and confined its reach to health care services provided on and after that effective date. (*Financial Services Law § 601*).

The independent dispute resolution ("IDR") process functions, in broad strokes, as follows. When a health care plan (a "Plan") receives a surprise bill, or a bill for emergency services rendered to its insured, the Plan must remit to the provider a "reasonable" amount (*Financial Services Law § 605 [a] [1])*. Either the provider or the Plan may thereafter submit a dispute regarding the fee to IDR by completing an application and annexing particulars justifying the reasonableness of the fee or payment, as the case may be (*Financial Services Law § 605 [a] [2]; 23 NYCRR 400.7 [b], [c], [d])*. If the dispute is eligible, the opposing party is afforded five business days to furnish information supporting the reasonableness of its own position (*23 NYCRR 400.8 [c]*). The dispute is committed to an independent dispute resolution entity (an "IDRE") certified by DFS (*Financial Services Law § 601)*, which must render its determination within thirty business days of receipt of the dispute (*Financial Services Law § 605 [a] [3]*), subject to a settlement interlude of up to ten business days that runs concurrently with, and does not toll, the thirty-business-day period (*Financial Services Law § 605 [a] [4])*. The IDRE's determination is binding upon the parties and admissible in evidence *(Financial Services Law § 605 [c])*. As originally enacted, *Article 6* contained no express temporal limit upon the submission of disputes to IDR. According to the affirmation of Laura Dillon, the Deputy Superintendent for the Consumer Assistance Unit at DFS, disputes are submitted through an online IDR portal maintained by DFS, which assigns to each dispute a unique IDR number and randomly assigns the dispute to one of five certified IDREs. (NY St Cts Filing [NYSCEF] Doc No. 23 at ¶1; ¶3).

***3** Two subsequent legislative interventions bear upon the controversy. First, as Part YY of the 2020 budget legislation (the "2020 Budget Act"), the Legislature enacted *CPLR § 213-d*, imposing a three-year statute of limitations upon an "action on a medical debt" by a licensed hospital or health care professional, running from the date of treatment; that enactment appeared alongside amendments to the *Article 6* provisions governing IDR for emergency services. (*see CPLR § 213-d)*. Second, and

centrally, on April 8, 2022, as Part AA, Subpart A, section 1 of the 2022 budget legislation (the "2022 Budget Act"), the Legislature appended to *Financial Services Law § 601* the following sentence (the "Amendment"): "Disputes shall be submitted to an independent dispute resolution entity within three years of the date the health care plan made the original payment on the claim that is the subject of the dispute." Section 12 of Subpart A directed that the enactment "shall take effect immediately," and the Amendment accordingly became operative on April 9, 2022, when the Governor signed the 2022 Budget Act into law. *(see Financial Services Law § 601)*. Subpart A bore a title denominating it an act to amend the *Financial Services Law*, the *Insurance Law*, and the *Public Health Law* "in relation to clarifying provisions regarding emergency medical services and surprise bills," and the Governor's Memorandum in Support stated that "Subpart A of the bill would clarify provisions pertaining to emergency medical services and surprise bills," while Subpart B, by contrast, would conform State law to the federal No Surprises Act. Notably, the Legislature expressly provided that certain other provisions of the very same Part AA would take effect upon deferred, specifically enumerated dates. (NY St Cts Filing [NYSCEF] Doc No. 35). And in the following year, as Part II of the 2023 budget legislation, the Legislature amended *Article 6* to render disputes concerning "mobile crisis intervention services" eligible for IDR, employing language that expressly postponed effectiveness until January 1, 2024 or January 1, 2025. (NY St Cts Filing [NYSCEF] Doc No. 31).

Turning to the particulars of this dispute, Petitioner provided emergency neurological services in March 2019 to a patient insured by respondents EmblemHealth Plan Inc. and/or EmblemHealth Inc. (together, "EmblemHealth"). (NY St Cts Filing [NYSCEF] Doc No. 1 at ¶18-¶19). For those services Petitioner billed EmblemHealth the sum of $151,000, of which EmblemHealth paid Petitioner $2,080.26 (*see id at* ¶20); the claim was paid on April 2, 2019 (*see id* at ¶21). On September 29, 2023, approximately one year and five months after the Amendment took effect, and nearly four and one-half years after EmblemHealth's original payment, an application for IDR of the dispute was submitted through the DFS portal and assigned dispute number IDR-2023-23406. (NY St Cts Filing [NYSCEF] Doc No. 3). The supplemental affirmation of Deputy Superintendent Dillon attests that the application was submitted on Petitioner's behalf by James Greenspan. (NY St Cts Filing [NYSCEF] Doc No. 41). The dispute was assigned to respondent Maximus, Inc. ("Maximus"), the designated IDRE. (NY St Cts Filing [NYSCEF] Doc No. 1 at ¶23).

By notice dated October 3, 2023 (the "Dismissal Notice"), Maximus advised Petitioner that the application had been dismissed. (NY St Cts Filing [NYSCEF] Doc No. 2). The Dismissal Notice recited that "Maximus received and reviewed the information you submitted related to the above referenced case. (*see id*). Based upon this review, Maximus has determined the request does not qualify for NY IDR Arbitration. (*see id*). The specific reason for the rejection is marked below." The reason marked was "Timely Filing," and the stated rejection rationale was that "[t]he claim was paid more than three (3) years prior to the date of the dispute filing date, per the IDR Process Outline reject timely filing." *(see id)*. The Dismissal Notice was rendered upon Maximus's letterhead, was subscribed by the "Maximus IDR Review Team," supplied an electronic mail address of nyarbitrations@maximus.com, and did not annex the document therein denominated the "IDR Process Outline." *(see id)*. Petitioner does not dispute that he sought IDR more than three years after EmblemHealth's payment of the claim.

Nothing further transpired for approximately one year and five months. On March 18, 2025, Petitioner's counsel transmitted a letter by electronic mail to the Maximus address furnished in the Dismissal Notice, requesting a copy of the "IDR Process Outline" and asserting that Financial Services Law § 601 had been improperly applied in a retroactive manner, positing that the three-year period should be deemed to accrue no earlier than the Amendment's April 9, 2022 effective date, so that the September 29, 2023 application was timely. (NY St Cts Filing [NYSCEF] Doc No. 3). By electronic mail dated March 19, 2025, Maximus responded that the dispute "was closed on October 4, 2023, due to the timeliness of its initiation," and directed any further inquiries or requests for DFS documents to DFS at IDRQuestions@dfs.ny.gov, copying that address upon the correspondence. (NY St Cts Filing [NYSCEF] Doc No. 4). On March 20, 2025, Petitioner's counsel replied, protesting the referral to DFS and demanding production of the "IDR Process Outline." (*see id*). That same day, an unnamed employee of DFS's Consumer Assistance Unit responded that "Maximus is correct in determining eligibility for your submission," explained that "[i]n 2022 as part of the NYS budget there is a three-year time frame for IDR submissions" commencing from the date the insurer first makes payment upon the claim, quoted the text of the Amendment, and identified the pages of the budget bill providing that Subpart A and the act shall be effective immediately, adding that any IDR submitted on or after April 9, 2022 would be subject

to the time frame. (*see id*). On March 26, 2025, Petitioner's counsel wrote again, professing confusion, inquiring whether it was DFS's position that the statute applies retroactively, and renewing the demand for the "IDR Process Outline"; DFS responded the same day, reiterating the effective-date provisions of the enactment and advising that requests for Departmental records must proceed by way of a FOIL request. (*see id*).

***4** Petitioner commenced this proceeding on July 3, 2025, twenty-one months after the Dismissal Notice, interposing four causes of action: first, that DFS adopted a "rule" by its retroactive interpretation of the Amendment without observing the procedural requirements of the *State Administrative Procedure Act* (*"SAPA"*); second, that DFS's interpretation and determination were arbitrary and capricious, an abuse of discretion, and affected by an error of law within the compass of *CPLR Article 78;* third, for a declaration that the Amendment does not apply retroactively and that the denial of Petitioner's IDR application was unlawful; and fourth, in the alternative, for a declaration that retroactive application of the Amendment absent a reasonable grace period offends Petitioner's constitutional right to due process, Petitioner proposing a grace period of no less than eighteen months. (NY St Cts Filing [NYSCEF] Doc No. 1).

The State Respondents cross-moved to dismiss the petition pursuant to *CPLR § 3211 [a] [5], CPLR § 3211 [a] [7]*, and *CPLR § 7804 [f]*, and further sought a declaration that the Amendment applies retroactively and that such retroactive application does not violate Petitioner's due process rights. (NY St Cts Filing [NYSCEF] Doc No. 33). In support, they invoke, among other things, the determination of this court (Bluth, J.) in a materially indistinguishable proceeding, *Matter of Neurosurgical Assoc. PC v New York State Dept. of Fin. Servs*. (2024 WL 1305940 [Sup Ct, New York County, 2024]) (the *"Neurosurgical* Decision"), in which identically pleaded claims, advanced by a medical provider whose IDR applications were dismissed under the Amendment's three-year limit, were dismissed as time-barred; the verified petition in that proceeding is annexed to the Costa affirmation as exhibit RX-8. (*see id*). In opposition, Petitioner contends principally that his claims did not accrue until March 2025 because the Dismissal Notice, upon its face, betrayed no involvement of any state actor; that the presumption against retroactivity has not been overcome; that due process commands a grace period of at least eighteen months; that the retroactive application was arbitrary, capricious, and inconsistently administered; and that DFS engaged in unlawful rulemaking. (NY St Cts Filing [NYSCEF] Doc No. 35; 36). The accompanying affirmation of David Yeger annexes, as Exhibits 4 and 5 (NY St Cts Filing [NYSCEF] Doc Nos. 37; 38), two IDRE determinations issued in 2021, before the Amendment's effective date, upon applications filed more than three years after the underlying services of December 6, 2016 and January 1, 2017, respectively; as Exhibit 6 (NY St Cts Filing [NYSCEF] Doc No. 39), an IDRE determination dated October 10, 2023, rendered after the Amendment's effective date, arising from services provided on June 13, 2019 upon an application filed in 2023; and, as Exhibit 7 (NY St Cts Filing [NYSCEF] Doc No. 40), a sample of the legal portion of a typical IDR submission. On reply, the State Respondents submit the supplemental Dillon affirmation, which further attests that Adrienne A. Harris's final day as Superintendent of Financial Services was October 17, 2025, and that her former position is presently held by Acting Superintendent Kaitlin Asrow. (NY St Cts Filing [NYSCEF] Doc No. 41).

### *III. Conclusions of Law*

### *A. The Governing Standards*

*A* cause of action interposed beyond the applicable limitations period must be dismissed pursuant to *CPLR § 3211 [a] [5]* where the movant establishes the untimeliness of the claim and the pleader tenders no cognizable basis for tolling or inapplicability (*see Flintlock Constr. Servs., LLC v Rubin, Fiorella & Friedman, LLP*, 188 AD3d 530 [1st Dept 2020]). A respondent in a special proceeding may raise such an objection in point of law by motion pursuant to *CPLR § 7804 [f]*. Further, upon a motion addressed to the legal sufficiency of the pleading under *CPLR § 3211 [a] [7]*, where the material facts are undisputed and the cause of action is devoid of merit, the court may enter a declaration in the movant's favor rather than merely dismissing the claim (*see Matter of Baychester Payment Ctr. v New York State Dept. of Fin. Servs.*, 2023 WL 8478873 [Sup Ct, New York County 2023]).

***B. The Article 78 Claim Is Barred by the Statute of Limitations***

***5** A proceeding under *CPLR Article 78* must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner (*see CPLR 217 [1]*). An administrative determination attains finality when the agency has reached a definitive position on the issue that inflicts actual, concrete injury, and the injury may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party (*see Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30 [2005]).

Measured against that standard, the challenged determination became final and binding upon Petitioner no later than October 3, 2023, the date of the Dismissal Notice. By that instrument, Petitioner was apprised in unmistakable terms that his application did "not qualify for NY IDR Arbitration" for the stated reason of "Timely Filing," because the claim "was paid more than three (3) years prior to the date of the dispute filing date." The notice thereby communicated a definitive position, namely, that the Amendment's three-year limit governed a dispute predicated upon a payment antedating the Amendment, and it inflicted the very injury of which Petitioner complains, to wit, the foreclosure of merits review of his fee dispute (*see Matter of Best Payphones*, 5 NY3d 30 [2005]; *Matter of Epic Sec. Corp. v City of N.Y.*, 198 AD2d 198 [1st Dept 1993]). Petitioner did not commence this proceeding until July 3, 2025, some twenty-one months later, and the *Article 78* claim is therefore time-barred.

The correspondence of March 2025 does not resuscitate the claim. It is settled that a request for reconsideration does not toll or revive the statutory period (*see Matter of Kan v New York City Envtl. Control Bd.*, 262 AD2d 135 [1st Dept 1999]), and that an agency's willingness to continue a dialogue after a final determination does not extend the four-month period of limitations (*see Gertler v Goodgold*, 66 NY2d 946 [1985]). The March 2025 electronic exchanges, in which DFS did no more than confirm the position already plainly evinced by the Dismissal Notice, could not, and did not, engender a fresh accrual. Indeed, upon materially indistinguishable facts, this court has already so held, ruling that a provider whose IDR applications were dismissed under the Amendment cannot "manufacture" a new accrual date for the statute of limitations by directing belated correspondence to the IDRE and DFS strategically within four months of commencement (*see Matter of Neurosurgical Assoc. PC v New York State Dept. of Fin. Servs.*, 2024 WL 1305940 [Sup Ct, New York County 2024]). The court finds the reasoning of the *Neurosurgical* Decision persuasive and adopts it here.

Petitioner's rejoinder, that the four-month period never commenced because the Dismissal Notice purportedly betrayed no involvement of any state actor and thus left him "completely in the dark" as to the governmental provenance of the determination, does not withstand scrutiny. As an initial matter, the contention appears nowhere in the petition; it surfaces for the first time in the opposition papers, and is unaccompanied by any affidavit of Dr. Sathi or of anyone possessed of personal knowledge attesting to such ignorance. A pleading may not be amended by the briefs submitted in opposition to a motion to dismiss (*see MediaXposure Ltd. [Cayman] v Omnireliant Holdings, Inc.*, 2010 WL 4225939 [Sup Ct, New York County 2010]; *see also, Residential Bd. of Mgrs. of Platinum v 46th St. Dev., LLC*, 154 AD3d 422 [1st Dept 2017]), and factual assertions unsupported by an affidavit of one with personal knowledge or other evidentiary proof merit no probative weight (*see Arriaga v Michael Laub Co.*, 233 AD2d 244 [1st Dept 1996]; *Doe v Intercontinental Hotels Grp., PLC*, 193 AD3d 410 [1st Dept 2021]).

***6** The contention is, in any event, belied by the record. The petition itself concedes that the application was submitted "pursuant to *Financial Services Law § 601,"* an enactment of the Legislature of this State administered by DFS. The application form, a specimen of which is annexed as exhibit RX-1 (NY St Cts Filing [NYSCEF] Doc No. 24), was available upon the DFS website, directed applicants to that website as the first step of the process, required navigation within the DFS website to obtain a file number, and instructed applicants to contact DFS, whose particulars it supplied, for assistance. The Dismissal Notice, for its part, announced that the request did not qualify for "NY IDR Arbitration" by reason of a three-year timely-filing bar measured from the date of payment, which is the precise metric prescribed by the Amendment. While it is true that the burden rests upon the party invoking the statute of limitations to establish that the petitioner was notified of the determination more than four months before commencement (*see Matter of Andrews v Incorporated Vil. of Freeport*, 221 AD3d 809 [2d Dept 2023]), and that ambiguity in the respondent's communications must be resolved in the petitioner's favor (*see Vadell v City of N.Y. Health &*

*Hosps. Corp.*, 233 AD2d 224 [1st Dept 1996]), the Dismissal Notice here suffered from no such ambiguity: it definitively closed the administrative door and stated with particularity the temporal ground upon which it did so. The authorities marshaled by Petitioner, in which the informal utterances of individual agency employees, antecedent to any official determination, were held incapable of being ascribed to the agency so as to render a proceeding ripe (*see Matter of Boyle v New York State Dept. of Motor Vehs.*, 200 AD3d 1375 [3d Dept 2021]; *Matter of Pyramid Co. of Onondaga v Hudacs*, 193 AD2d 924 [3d Dept 1993]), are inapposite; those decisions concern prematurity, whereas here a final and binding eligibility determination issued through the very channel the statutory scheme prescribes. Nor need the court tarry over Petitioner's discourse upon constructive notice of quasi-legislative determinations (*see Matter of Knavel v West Seneca Cent. School Dist.*, 149 AD3d 1614 [4th Dept 2017]; *Matter of Lenihan v City of New York*, 58 NY2d 679 [1982]; *Matter of Owners Comm. on Elec. Rates v Public Serv. Commn. of State of N.Y.*, 150 AD2d 45 [3d Dept 1989], *revd on dissenting op 16* NY2d 779 [1990]), for Petitioner received actual notice of the operative determination, and of its stated rationale, on October 3, 2023. Accordingly, the *Article 78* claim is time-barred.

### *C. The SAPA Claim Is Untimely*

Petitioner's first cause of action alleges that DFS adopted a "rule," consisting of its retroactive construction of the Amendment, without observing SAPA's procedural strictures. A proceeding to contest a rule upon the ground of noncompliance with the procedural requirements of *SAPA § 202* must be commenced within four months from the effective date of such rule (*SAPA § 202 [8]*). Assuming, *arguendo*, and contrary to the conclusion reached below, that DFS adopted a "rule" at all, the claim accrued no later than October 3, 2023, when the Dismissal Notice apprised Petitioner that the three-year limit was being applied to a dispute predicated upon a pre-Amendment payment. A claim that an agency's position was adopted without compliance with *SAPA* is, in essence, a claim that the position was taken "in violation of lawful procedure," and is therefore subject to the same four-month limitations period applicable to *Article 78* proceedings (*see Matter of Carr v New York State Div. of Hous. & Community Renewal*, 217 AD3d 442 [1st Dept 2023]; *accord Matter of Neurosurgical Assoc. PC*, 2024 WL 1305940 [Sup Ct, New York County [2024]).

Petitioner's reliance upon *Matter of Long Is. Coll. Hosp. v New York State Dept. of Health* (203 AD2d 292 [2d Dept 1994]) and kindred authority for the proposition that an improperly promulgated rule has no "effective date" and thus never triggers the four-month period is unavailing. Those decisions concerned agencies that essayed formal promulgation but stumbled upon a required procedural formality; they do not countenance the proposition, advanced here, that a litigant may confer upon himself a limitless season of challenge by the simple expedient of denominating an agency's statutory interpretation a "rule" and styling his grievance as a *SAPA* violation. To adopt Petitioner's contention that the challenged position never became effective would create an infinite period of challenge that would vitiate the very purpose underlying the statute of limitations (*see Matter of Entergy Nuclear Indian Point 2, LLC v New York State Dept. of Envtl. Conservation*, 23 AD3d 811 [3d Dept 2005]). The *SAPA* claim, interposed more than twenty-one months after accrual, is therefore time-barred.

### *D. The Declaratory Judgment and Due Process Claims Are Untimely*

Where a declaratory judgment action asserts a claim that could have been resolved in a proceeding pursuant to *CPLR Article 78*, the four-month limitations period governing such proceedings applies (*see Matter of Lenihan v City of New York*, 58 NY2d 679 [1982]; *New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194 [1994]). Petitioner's third cause of action, seeking a declaration that DFS's retroactive construction of the Amendment was unlawful and that the resultant denial of his IDR application was illegal, is precisely such a claim: a challenge to an agency's interpretation or application of a statute lies comfortably within the province of *Article 78 (see New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194 [1994]; *Matter of Baychester Payment Ctr.*, 2023 WL 8478873 [Sup Ct, New York County 2023]), and, indeed, Petitioner's own second cause of action seeks that identical relief in *Article 78* garb. The fourth cause of action fares no better. An *Article*

*78* proceeding is generally the proper vehicle to determine whether a statute, ordinance, or regulation has been applied in an unconstitutional manner (*see Matter of Kovarsky v Housing & Dev. Admin. of City of N.Y.*, 31 NY2d 184 [1972]), and an as-applied due process challenge to agency action is cognizable in, and time-limited by, *Article 78 (see Matter of Ugo-Alum v New York State Dept. of Motor Vehs.*, 211 AD3d 500 [1st Dept 2022], *lv denied* 39 NY3d 912 [2023]; *Matter of Levitsky v Swarts*, 101 AD3d 879 [2d Dept 2012]). The petition attributes the asserted deprivation to DFS's application of the Amendment to his dispute, agency action par excellence. Both claims accrued, at the latest, upon receipt of the Dismissal Notice on October 3, 2023, and both, having been interposed twenty-one months thereafter, are time-barred (*see Matter of Neurosurgical Assoc. PC*, 2024 WL 1305940 [Sup Ct, New York County 2024] [dismissing identically framed declaratory and due process claims as cognizable under *Article 78* and untimely]). Petitioner's protestation of ignorance of state action is rejected for the reasons already canvassed.

### *E. In Any Event, the Petition Fails to State a Cause of Action*

***7** Although the foregoing determinations of untimeliness suffice to dispose of the proceeding, the court addresses the merits in the alternative, and concludes that each cause of action would independently founder upon *CPLR § 3211 [a] [7]*. Because the material facts are undisputed and the declaratory claims are devoid of merit, the appropriate disposition as to those claims is the entry of a declaration in the State Respondents' favor (*see Matter of Baychester Payment Ctr.*, 2023 WL 8478873 [Sup Ct, New York County [2023]).

### *F. The Amendment Applies Retroactively*

To determine whether a statute applies retroactively, the court inquires whether the enactment would have retroactive effect and, if so, whether the Legislature intended that effect, thereby surmounting the presumption against retroactivity (*see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332 [2020]). The court is mindful that retroactive legislation is viewed with great suspicion *(see id)*, that it takes a clear expression of the legislative purpose to justify a retroactive application (*see Gleason v Gleason*, 26 NY2d 28 [1970]), and that the presumption against retroactivity is deeply rooted in our jurisprudence (*see Landgraf v USI Film Prods.*, 511 US 244 [1994]). The ultimate question, however, remains one of statutory interpretation: no particular words are required, and, where the statute contains no express prescription of its temporal reach, the court searches, applying normal rules of construction, for a less explicit but comparably firm conclusion of legislative intent to apply the enactment to conduct that occurred previously; in some instances, retroactive intent may be discerned from the very nature of the legislation (*see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332 [2020]). The Court of Appeals has identified several factors that evidence such an intent, among them a directive that the statute take effect immediately, a legislative purpose to clarify what the law was always meant to say and do, and the remedial character of the enactment (*see Brothers v Florence*, 95 NY2d 290 [2000]; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577 [1998]).

The confluence of those factors here persuades the court that the Legislature intended the Amendment to reach disputes, such as Petitioner's, predicated upon payments antedating April 9, 2022. First, the Legislature commanded that Subpart A take effect “immediately,” a directive that evinces a sense of urgency consonant with retroactive operation (*see Brothers v Florence*, 95 NY2d 290 [2000]). The court is aware that such language, standing alone, is equivocal and not determinative (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577 [1998]), but it does not stand alone. Its probative force is materially amplified by the contrast, within the four corners of the very same Part AA, between the immediately effective Subpart A and other provisions to which the Legislature expressly assigned deferred effective dates. Where the Legislature renders one provision immediately operative while expressly confining companion provisions of the same enactment to prospective application, an intent that the former apply retroactively is clearly evinced (*see Alston v Transport Workers Union of Greater N.Y.*, 225 AD2d

424 [1st Dept 1996]; *McGuirk v City School Dist. of City of Albany*, 116 AD2d 363 [3d Dept 1986]). The Legislature's facility with prospective drafting in this very domain is further illustrated by article 6 itself, whose original enactment was deferred a full year and confined to services rendered on and after March 31, 2015, and by the 2023 Budget Act, whose mobile-crisis provisions were expressly postponed. Had the Legislature intended the three-year limit to govern only disputes arising after April 9, 2022, it plainly knew how to say so; it chose otherwise.

***8** Second, both the title of Subpart A and the Governor's Memorandum in Support declare that the enactment was intended to “clarify” the provisions of article 6 pertaining to emergency medical services and surprise bills, and a legislative design to clarify what the law was always meant to say and do is a recognized hallmark of retroactive intent (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577 [1998]; *Brothers v Florence*, 95 NY2d 290 [2000]). The clarification is intelligible against the surrounding statutory landscape: an action to recover upon a liability created or imposed by statute must be commenced within three years (*CPLR § 214 [2]*), and the Legislature had, in 2020, imposed a three-year limitation upon an action on a medical debt *(CPLR § 213-d)*, the judicial analog of an IDR dispute; the Amendment is reasonably understood as clarifying that a coordinate three-year limit attends the administrative channel. Petitioner's riposte, that the true purpose of the enactment was alignment with the federal No Surprises Act rather than clarification, conflates Subpart A with Subpart B. The Governor's Memorandum in Support differentiates the two: Subpart A “would clarify provisions pertaining to emergency medical services and surprise bills,” whereas it is Subpart B that would conform State law to the federal statute. The Amendment resides in Subpart A.

Third, the Amendment is remedial in nature. A statute that is remedial should be liberally construed to carry out the reform intended and to spread its beneficial effects as widely as possible, and therefore should be accorded retroactive effect (*see Matter of Jaquan L. [Pearl L.]*, 179 AD3d 457 [1st Dept 2020]; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577 [1998]). The Amendment confers upon patients, Plans, and providers the finality, certainty, and predictability that periods of limitation are designed to secure, for statutes of limitation not only save litigants from defending stale claims, but also express a societal interest or public policy of giving repose to human affairs (*see ACE Sec. Corp. v DB Structured Prods., Inc.*, 25 NY3d 581 [2015]). Absent the Amendment's operation upon antecedent payments, IDR participants would remain exposed in perpetuity to the exhumation of long-dormant disputes, precisely the fate this record exemplifies, Petitioner having tendered a dispute nearly four and one-half years stale.

Petitioner's remaining objections are unpersuasive. His method, which interrogates each indicium in isolation and pronounces each independently insufficient, misconceives the governing analysis, which weighs the evidence of legislative intent collectively (*Brothers v Florence*, 95 NY2d 290 [2000]). His invocation of *Ruth v Elderwood at Amherst* (209 AD3d 1281 [4th Dept 2022]) is unavailing, for there the proponents of retroactivity could summon only an immediate effective date and an assumption of remedial purpose, whereas here those indicia are joined by an express clarifying purpose and by the eloquent intra-statutory contrast between immediately effective and expressly deferred subparts. And to the extent the Amendment is properly characterized, as Petitioner insists, as a statute of limitations, that characterization only fortifies the conclusion, for statutes of limitation are considered procedural because they are deemed as pertaining to the remedy rather than the right (*see Contact Chiropractic, P.C. v New York City Tr. Auth.*, 31 NY3d 187 [2018]), and are generally given retroactive effect (*see State v Mason*, 78 Misc 3d 437 [Sup Ct, Suffolk County 2023]; *Verra v Koluksuz*, 74 AD2d 932 [3d Dept 1980]). Accordingly, DFS's construction was correct, the third cause of action fails, and the State Respondents are entitled to a declaration that the Amendment applies retroactively.

### *G. Retroactive Application Comports with Due Process*

To comport with the requirements of due process, retroactive application of a newly enacted provision must be supported by a legitimate legislative purpose furthered by rational means (*see* *Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332 [2020]; *American Economy Ins. Co. v State of New York*, 30 NY3d **136** [2017]). The test is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose (*see* *American Economy Ins. Co. v State of New York*, 30 NY3d 136 [2017], *quoting* *Pension Ben. Guar. Corp. v R.A. Gray & Co.*, 467 US 717 [1984]), and any conceivable legitimate State purpose will suffice (*see id.; Myers v Schneiderman*, 30 NY3d 1 [2017]). Such purposes abound here. Retroactive operation harmonizes the temporal limit for invoking IDR upon an unpaid surprise or emergency bill with the three-year limitation the Legislature had already fastened upon the analogous court action on a medical debt *(see CPLR § 213-d)* and upon statutory liabilities generally *(see CPLR § 214 [2])*, thereby averting the anomaly of a judicial claim subject to repose while its administrative counterpart roamed free of any temporal boundary. It likewise confers the benefit of repose upon Plans and providers presently, rather than deferring that benefit for years, sparing Plans the obligation to hold their books open, and to preserve records against the contingency of a five-business-day responsive submission, indefinitely. Petitioner's contention that the Legislature might have achieved repose by gentler means, by commencing the three-year period at the Amendment's effective date, inverts the constitutional standard, which asks not whether hypothetical alternatives existed but whether the course actually chosen was rational; and, in any event, Petitioner's alternative would have prolonged exposure to stale disputes, some reaching back to the program's 2015 inception, for years beyond the Legislature's chosen horizon. This case bears no resemblance to *Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, (35 NY3d 332 [2020]), in which the Court of Appeals discerned no rational justification for a retroactive expansion of overcharge liability that harshly disrupted owners' settled expectations; the Amendment works no comparable disruption, but merely subjects an administrative remedy to the selfsame period of repose that already attended its judicial analog.

***9** Petitioner's principal due process theory rests upon the line of authority holding that, where a limitations period is statutorily shortened, or created where none existed before, due process requires that potential litigants be afforded a reasonable time for the commencement of an action before the bar takes effect (*see* *Brothers v Florence*, 95 NY2d 290 [2000]; *Dunkum v Maceck Bldg. Corp.*, 256 NY 275 [1931]; *Terry v Anderson*, 95 US 628 [1877]). There is substantial reason to doubt that the doctrine has any purchase here, for a statute of limitations ordinarily governs an action in court (*see CPLR § 201)*, not an administrative proceeding (*see Matter of Brownell v New York State Just. Ctr. for Protection of People With Special Needs*, 212 AD3d 998 [3d Dept 2023]), and Petitioner himself insists, in resisting the State Respondents' reliance upon *CPLR § 214 [2]* and *CPLR § 213-d*, that the *CPLR* governs only judicial proceedings and does not purport to regulate proceedings before administrative agencies (*see Matter of Hicks v New York State Div. of Hous. & Community Renewal*, 75 AD3d 127 [1st Dept 2010]). Moreover, *Article 6* supplies no private right of action for its enforcement (*see* *Buffalo Emergency Assocs., LLP v Aetna Health, Inc.*, 167 AD3d 461 [1st Dept 2018]), and the grace-period jurisprudence, forged in the crucible of judicial actions with their attendant pleadings, tolls, and equitable doctrines, maps imperfectly onto a summary administrative mechanism resolved by healthcare professionals within thirty business days.

The claim fails, however, even upon the assumption most generous to Petitioner, namely, that the Amendment is a statute of limitations newly created and that a reasonable grace period was constitutionally required. The period afforded need only be reasonable under the circumstances, including any unique circumstances attending the particular scheme (*see Matter of County of Chemung v Shah*, 28 NY3d 244 [2016]), and grace periods as abbreviated as thirty calendar days have been sustained where appropriate (*see* *Ruiz-Martinez v Mukasey*, 516 F3d 102 [2d Cir 2008]). The State Respondents urge a period of thirty business days, mirroring the interval the Legislature allotted for the completion of the entire IDR process *(Financial Services Law § 605 [a] [3])*, and observe that the process demands no counsel, no pleadings, no discovery, and no legal argument, but only a form submission justifying the reasonableness of an already-charged fee under the statutorily enumerated factors *(Financial Services Law § 604)*, to which the opposing party must respond within a mere five business days (*23 NYCRR 400.8 [c]*).

Petitioner counters that the pre-filing labors of a provider, marshaling the patient's plan, medical history, treatment particulars, and comparative fee data, warrant a period of no less than eighteen months. The court need not fix the constitutional minimum with arithmetic precision, for Petitioner's claim founders at either terminus of the plausible range. The most capacious grace period identified in any authority cited by either party is one year (*see* *Brothers v Florence*, 95 NY2d 290 [2000]) [one-year period for claims immediately time-barred by shortened limitations period]; *Matter of Roman Catholic Diocese of Albany v New York State Workers' Compensation Bd.*, 96 AD3d 1288 [3d Dept 2012] [one-year period reasonable where limitations period newly created]; *State v Mason*, 78 Misc 3d 437 [Sup Ct, Suffolk County 2023] [one-year period reasonable]), and Petitioner adduces no authority whatsoever for a period of eighteen months. Petitioner did not submit his application until September 29, 2023, one year, five months, and twenty days after the Amendment's April 9, 2022 effective date. Even were this court to engraft upon the Amendment the most generous grace period any cited precedent has countenanced, Petitioner's application would remain untimely. His due process claim therefore fails as a matter of law, and the State Respondents are entitled to a declaration that retroactive application of the Amendment did not violate Petitioner's due process rights.

### *H. The Article 78 Claim Fails on the Merits*

***10** *CPLR § 7803 [3]* authorizes review of whether a determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion. Because, as set forth above, DFS correctly construed the Amendment as applying retroactively, and because that retroactive application worked no constitutional infirmity, the determination that Petitioner's dispute was ineligible for IDR was neither an error of law, nor arbitrary and capricious, nor an abuse of discretion (*see Matter of Amalgamated Warbasse Houses, Inc. v Tweedy*, 33 AD3d 794 [2d Dept 2006] [agency's retroactive application of limitations period not arbitrary, capricious, or an abuse of discretion where statute and legislative history supported retroactive intent]). Petitioner's derivative theory, that a due process violation is itself arbitrary and capricious (*see Matter of Williamsburg Charter High School v New York City Dept. of Educ.*, 36 Misc 3d 810 [Sup Ct, Kings County 2012]; *Matter of Furde v New York City Dept. of Correction*, 9 Misc 3d 268 [Sup Ct, Bronx County 2005]), collapses with the due process claim upon which it is parasitic.

Nor does Petitioner's accusation of inconsistent administration, resting upon the single IDRE determination annexed as Exhibit 6 (NY St Cts Filing [NYSCEF] Doc No. 39) to the Yeger affirmation, salvage the claim. The allegation appears nowhere in the petition, and a claim for relief may not be amended by the briefs in opposition to a motion to dismiss (*see MediaXposure Ltd.*, 2010 WL 4225939 [Sup Ct, New York County 2010]). The exhibit, moreover, does not establish what Petitioner would have it establish: it discloses the date upon which the underlying services were rendered, June 13, 2019, but the Amendment's three-year measure runs from the date the health care plan made the original payment on the claim, a datum the exhibit does not supply. And even were the court to indulge the inference that a solitary IDRE erroneously entertained a time-barred dispute, a single aberrant determination by one of five independent entities is a far cry from the unexplained inconsistency in agency policy that will condemn an interpretation as arbitrary and capricious (*cf. Matter of Riverkeeper, Inc. v Seggos*, 60 Misc 3d 462, 479 [Sup Ct, Albany County 2018]). The second cause of action therefore fails.

### 7. *The SAPA Claim Fails on the Merits*

Finally, the *SAPA* claim would fail even if timely, because DFS engaged in no rulemaking. *SAPA* defines a "rule," in pertinent part, as the whole or part of each agency statement, regulation, or code of general applicability that implements or applies law (*see* *SAPA § 102 [2] [a]*), but expressly excludes from that definition "forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory" (*SAPA § 102 [2] [b] [iv]*). An agency's articulation of its interpretation of a statute is therefore not a rule subject to *SAPA's* procedural apparatus (*see* *Matter of Elcor Health Servs., Inc. v Novello*, 100 NY2d 273 [2003]). Nor is an agency obliged to promulgate a rule before implementing a clear and specific statutory command: where the purpose of a statutory scheme is specific, there is

no constitutional compulsion to translate the Legislature's standards into formal and detailed rules (*see Matter of* *O'Neil v Metropolitan Tr. Auth.*, 143 AD2d 739 [2d Dept 1988]; *see also* *Matter of Ellis Ctr. for Long Term Care v De Buono*, 261 AD2d 791 [3d Dept 1999]; *Matter of Assn. for Community Living, Inc. v New York State Off. of Mental Health*, 92 AD3d 1066 [3d Dept 2012]).

Here, the three-year bar, its measuring point, and, as the court has concluded, its retroactive reach are all the handiwork of the Legislature, not of DFS. In applying the Amendment to Petitioner's dispute and in confirming, through the Dismissal Notice and the subsequent correspondence of its Consumer Assistance Unit, its understanding of the statute's temporal operation, DFS did no more than interpret and implement a legislative mandate. Petitioner's authorities, which condemn fixed standards, blanket requirements, and rigid numerical policies of the agency's own devising when adopted without *SAPA* compliance (*see* *Schwartfigure v Hartnett*, 83 NY2d 296 [1994]; *Matter of Alca Indus., Inc. v Delaney*, 92 NY2d 775 [1999]; *People v Cull*, 10 NY2d 123 [1961]; *Homestead Funding Corp. v State of NY. Banking Dept.*, 95 AD3d 1410 [3d Dept 2012]; *Matter of Consumer Directed Personal Assistance Assn. of NY. State v Zucker*, 65 Misc 3d 1005 [Sup Ct, Albany County 2019]; *Medical Socy. of State of N.Y. v Levin*, 185 Misc 2d 536 [Sup Ct, New York County 2000], *affd* 280 AD2d 309 [1st Dept 2001]), are inapposite, for in each the operative standard originated with the agency, whereas here it originated with the Legislature. Petitioner's remaining observation, that an agency's interpretation of a statute outside its special competence commands diminished deference (*see* *Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359 [1999]), addresses the weight to be accorded the agency's construction upon *Article 78* review, a construction this court has in any event independently found to be correct, and says nothing about whether that construction constituted rulemaking within the ambit of *SAPA*. The first cause of action therefore fails.

### *IV. Conclusion and Decretal Paragraphs*

***11** The court has considered the parties' remaining contentions and finds them unavailing or rendered academic by the foregoing. Each of Petitioner's four causes of action is barred by the applicable four-month statute of limitations, and each would, in any event, fail to state a cause of action; the declaratory claims, resting as they do upon undisputed facts, warrant the entry of a declaration in the State Respondents' favor. Because the untimeliness and legal insufficiency of the petition inhere in the pleading itself, the dismissal operates to terminate the proceeding as against all respondents. Accordingly, it is hereby

***ORDERED*** that the cross-motion of respondents New York State Department of Financial Services and Adrienne A. Harris, as Superintendent of the New York State Department of Financial Services (Motion Sequence No. 002A), to dismiss the Verified Petition pursuant to *CPLR § 3211 [a] [5], CPLR § 3211 [a] [7]*, and *CPLR § 7804 [f]* is granted in its entirety; and **it** is further

***ORDERED*** that the petition of Sumeer Sathi (Motion Sequence No. 002) is denied in its entirety, and the proceeding is dismissed as against all respondents; and it is further

***ORDERED, ADJUDGED, AND DECLARED*** that the amendment to *Financial Services Law § 601* effected by Part AA, Subpart A, of the 2022 Budget Act, providing that disputes shall be submitted to an independent dispute resolution entity within three years of the date the health care plan made the original payment on the claim that is the subject of the dispute, applies retroactively to disputes predicated upon payments made before its April 9, 2022 effective date; and it is further

***ORDERED, ADJUDGED,*** *AND* ***DECLARED*** that such retroactive application of the amendment to *Financial Services Law § 601* did not violate Petitioner's constitutional right to due process; and it is further

***ORDERED*** that the Clerk of the Court is directed to enter judgment accordingly; and it is further

***ORDERED*** that any relief requested and not expressly granted herein is denied.

This constitutes the decision, order, and judgment of the court.

Dated: August 11, 2026

New York, New York

<<signature>>

HON. RONALD CASTORINA, JR.

JUSTICE OF THE SUPREME COURT

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.