2026 WL 2905776
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

DAMIAN BATISTA and SANDRA BATISTA, Plaintiffs,
v.
EDELMAN SCHWARTZ PLLC, ZEV SCHWARTZ, 1915 REALTY LLC, PHELAN PLACE HOLDINGS LLC, DK & CK MANAGEMENT CORP., and DOVID KLEINER, Defendants.

26-cv-2557 (JSR)
|
September 28, 2026

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

***1** Damian and Sandra Batista ("Plaintiffs") are low-income Section 8 housing tenants who sued their landlord and their landlords' lawyers for unlawfully attempting to collect rental arrears, culminating in a nonpayment eviction proceeding in Bronx County Housing Court. Plaintiffs brought four claims: violation of the federal Fair Debt Collection Practices Act ("FDCPA"), violation of New York General Business Law ("GBL") § 349, violation of New York Judiciary Law § 487, and gross negligence. Defendants moved to dismiss all claims, and on July 15, 2026, this Court entered a bottom-line order holding that the statute of limitations does not bar Plaintiffs' FDCPA claim. This Court reserved resolution of all other arguments for dismissal until after Plaintiffs filed an anticipated amended complaint and defendant's filed new motions to dismiss.

Plaintiffs filed a First Amended Complaint ("FAC") the next day on July 16, 2026. The FAC names as defendants Edelman Schwartz PLLC and Zev Schwartz ("Attorney Defendants") and 1915 Realty LLC, Phelan Place Holdings LLC, DK & CK Management Corp., and Dovid Kleiner ("Landlord Defendants") (all together, "Defendants"). Both sets of Defendants filed separate motions to dismiss the FAC.

For the reasons explained below, the motions to dismiss are denied. This Opinion also explains the reasons for the July 15 bottom-line order denying Attorney Defendants' earlier motion to dismiss the FDCPA claim on statute of limitations grounds.

## I. Background

### A. Factual Background

The Plaintiffs are tenants at 1915 Billingsley Terrace in the Bronx, which participates in the federal Section 8 Housing Choice Voucher Program. FAC ¶¶ 5-6, 20-23. Under the Section 8 Housing Choice Voucher Program, the New York City Housing Authority ("NYCHA") annually calculates a participant's share of the monthly rent based on household income and pays the remaining balance of the legally regulated rent directly to the property owner. FAC ¶ 24.

1915 Realty, which at the time owned the building at 1915 Billingsley Terrace, entered into a Housing Assistance Payment contract ("HAP contract") with NYCHA in which it agreed to comply with Section 8 program regulations to receive Section 8 subsidy payments. FAC ¶ 24. Under the terms of the HAP contract, the landlord must maintain the apartment in compliance with the federal Housing Quality Standards ("HQS") required under Section 8. FAC ¶ 24. NYCHA may suspend its Section 8 subsidy payments if a landlord fails to maintain a unit in compliance with the federal HQS. See FAC ¶¶ 27-30. The HAP contract tenancy addendum provides that tenants remain responsible only for their designated share of the rent and cannot be charged for NYCHA's portion. FAC ¶¶ 26-27.

#### 1. The Alleged Rental Overcharges

The FAC alleges that between October 2022 and August 2025 the Landlord Defendants charged at least $8,936.58 in unlawful rent. FAC ¶ 45. First, between October 2022 and May 2023, the Landlord Defendants overcharged Plaintiffs $50.13 per month: according to the FAC, "the total contract rent registered with NYCHA" during that time was $2,001,25, but Landlord Defendants charged Plaintiffs $2,051.38 in total contract rent. FAC ¶37. The total resulting overcharge for the months in question was $401.04. FAC ¶37.

***2** Second, on December 11, 2023, the New York City Department of Buildings ("DOB") issued a vacate order for 1915 Billingsley Terrace after determining that hazardous conditions rendered the entire building unsafe to occupy. FAC ¶ 38. The Department of Housing and Community Renewal ("DHCR") reduced the legal regulated rent to $1,00 per month effective December 11, 2023, then restored it effective January 4, 2024. See FAC ¶ 39, Plaintiffs allege that they overpaid rent by $788.55 in December 2023 and January 2024: Plaintiffs paid their full tenant share of $1038 for both months, even though the prorated rent for December should have been $334.84 and the prorated rent for January should have been $937.55. FAC ¶40.

Third, NYCHA suspended its subsidy payments from January through November 2024 because the building's hazardous conditions violated HQS requirements. See FAC ¶ 41. The FAC alleges that, despite NYCHA's suspension of subsidy payments, 1915 Realty charged the Plaintiffs the full contract rent by including NYCHA's share in their rental arrears. FAC ¶ 37. As a result, Landlord Defendants added $8,176.24 in arrears to Plaintiffs' rent ledger that Plaintiffs allegedly did not legally owe. FAC 542.

Then, in February 2024, DHCR froze Plaintiffs' rent because 1915 Realty failed to maintain required services in the apartment. FAC ¶ 43. Plaintiffs allege that 1915 Realty nevertheless increased the monthly rent in June 2024 and again in June 2025. FAC ¶ 44. NYCHA did not increase its payments following the June 2025 rent increase, and as a result between June 2025 and August 2025, Landlord Defendants overcharged Plaintiffs by $359.30. FAC ¶ 44.[1]

Finally, Plaintiffs allege that the Landlord Defendants failed to properly apply a $2,500 rent credit Plaintiffs received from a legal settlement. FAC ¶ 47. Plaintiffs allege that the Landlord Defendants applied the rent credit on February 12, 2025 to the missing Section 8 portion of the total contract rent, rather than to Plaintiffs' share of the rent. FAC ¶ 47. The settlement, however, stated that "the Rent Credit will be applied to that Petitioner's share of the rent only and not to any rent share attributable to the subsidy, whether or not the Respondent-Owners received such subsidy." FAC ¶ 47.

Based on the misapplied rent credit and the overpayments in August and September 2022, December 2023, and January 2024, Plaintiffs allege that they overpaid the Landlord Defendants by $3,389.50. FAC ¶ 49.

**2. Landlord Defendants' Housing Court Petition**

On or around February 19, 2025, Mrs. Batista was personally served with a fourteen-day rent demand dated February 18, 2025, signed by the Attorney Defendants, seeking $8,339.60 in rental arrears. See FAC ¶ 61; Ex. A. On or about March 31, 2025, the Attorney Defendants commenced a nonpayment proceeding in Bronx County Housing Court seeking $9,132.76 in alleged rental arrears.[2] See FAC ¶ 63. Mr. Batista went to Bronx County Housing Court to submit an answer to the petition without representation. Mr. Batista noted that Plaintiffs had paid all rent that they were legally responsible for and that the Defendants were seeking the Section 8 portions of the rent, for which Plaintiffs are not liable. FAC ¶ 79.

In July 2025, Bronx Legal Services began assisting Plaintiffs. FAC ¶80. The case was adjourned in August 2025. On September 23, 2025, Bronx Legal Services explained to the Attorney Defendants via email that Plaintiffs had made all of their payments for their share of the rent and requested that the case be dismissed with prejudice. FAC 82, Ex. R. The email included bank transaction records showing Plaintiffs' payments and the rent reduction orders. The Attorney Defendants responded, without explanation, that "in may [sic] 2025 he owed around 9200 in may [sic] and we have [sic] him 2500 credit in February 2024." FAC ¶ 82, Ex. S.

***3** On October 1, 2025, Bronx Legal Services emailed the Attorney Defendants again. FAC ¶ 83, Ex. T. Bronx Legal Services provided the same factual summary, made the same request, and included a rent ledger, Plaintiffs' payment information, the rent reduction orders, and NYCHA tenant share letters. On October 21, 2025, Bronx Legal Services filed a motion for summary judgment or, in the alternative, dismissal on behalf of Plaintiffs including the same evidence and more. FAC ¶ 85. The case was adjourned again in October 2025.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Following another adjournment at a December 9, 2025, court appearance, Bronx Legal Services emailed the Attorney Defendants once more on December 12, 2025. FAC ¶¶ 85-86, Ex. W. Mr. Schwartz responded requesting copies of the referenced documents, which Bronx Legal Services provided the same day. At the December 22, 2025 court appearance, the case was adjourned again to give the Attorney Defendants time to file an opposition to the motion for summary judgment. FAC ¶ 87.

On February 3, 2026, Bronx Legal Services sent a fourth email to the Attorney Defendants with the same summary of facts explaining why Plaintiffs did not owe the rent sought by Defendants. FAC ¶ 88, Ex. Y. Mr. Schwarts responded "Let me review." FAC ¶ 88, Ex. Z.

On February 23, 2026, the Bronx housing court was closed, so the case was adjourned until April 22, 2026. Finally, at the April 22, 2026 appearance, the parties signed a stipulation of discontinuance in which "Petitioner agree[d] that the Petition was satisfied." FAC ¶ 90, Ex. AI.

The FAC alleges that the Attorney Defendants' petition failed to identify Plaintiffs as Section 8 participants, failed to plead compliance with the Second Partial Consent Judgment in Williams v. New York City Housing Authority, No. 81-cv-1801, ECF No. 139 (S.D.N.Y. Feb. 14, 1995); failed to refer to or include the required Certification of Basis for Eviction; and failed to demonstrate that NYCHA received service of the pleadings, as legally required. FAC ¶ 74.

According to the FAC, Plaintiffs' experience is not an isolated incident. Specifically, the FAC alleges that "[i]t is the practice of the Landlord Defendants to charge tenants the full contract rent in the event of a suspended Section 8 payment from NYCHA," based on defendant Kleiner's deposition testimony. FAC ¶ 53, 58-60, 66-69. The Landlord Defendants allegedly do so in rent ledgers, rent demand letters, and housing court petitions. Moreover, the FAC alleges that the Attorney Defendants have filed many other nonpayment lawsuits against Section 8 tenants premised on arrears that were not owed and provides three specific examples. FAC ¶¶ 92-113.

According to the FAC, the threat of eviction caused the Plaintiffs severe emotional and physical distress, including embarrassment, humiliation, and anxiety. See FAC ¶¶ 115-20, 123. They also claim travel expenses, attorney consultation costs, and lost wages incurred from defending the Housing Court proceeding. FAC ¶ 124.

**B. Procedural Background**

On March 30, 2026, Plaintiffs filed this lawsuit based on the foregoing facts, alleging violations of the Fair Debt Collection Practices Act and NY Judiciary Law § 487 against the Attorney Defendants, and violations of NY General Business Law § 349 and gross negligence against all defendants. See ECF No. 3. Both sets of defendants moved to dismiss, see ECF Nos. 24, 27, and oral argument was heard on July 14, 2026, see ECF No. 35. On July 15, 2026, this Court issued a bottom-line order denying the motion to dismiss to the extent that it argued that the FDCPA claim was time-barred. See ECF No. 36. On July 16, 2026, Plaintiffs filed the First Amended Complaint. Both sets of defendants again moved to dismiss. See ECF Nos. 44, 46.

## II. Legal Standard

***4** To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 555-56; Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., 712 F.3d 705, 717 (2d Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation modified).

Similarly, the court must accept the complaint's factual allegations as true on a facial Rule 12(b)(1) challenge to plaintiffs' standing. W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP, 549 F.3d 100, 106 (2d Cir. 2008); Carter v. HealthPort Techs., LLC, 882 F.3d 47, 56 (2d Cir. 2016).

## III. Analysis

**A. Claim 1: Federal Debt Collections Practice Act**

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(against the Attorney Defendants)**

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). "Because the FDCPA is remedial in nature, its terms must be construed in liberal fashion." Vincent v. The Money Store, 736 F.3d 88, 98 (2d Cir. 2013) (citation modified). Section 1692e prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," and § 1692f prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." "[B]ack rent is a debt" under the FDCPA, because it is an " 'obligation ... to pay money arising out of a transaction' that involved 'personal family, or household purposes.' " Romea v. Heiberger & Associates, 163 F. 3d 111, 115 (2d Cir. 1998) (quoting 15 U.S.C. § 1692a(5)).

The Attorney Defendants do not at this point challenge the merits of the FDCPA claim, but instead raise two jurisdictional arguments: first, that the statute of limitations bars Plaintiffs' claim; and second, that Plaintiffs lack standing. The Court is not persuaded.

**1. Statute of Limitations**

The FDCPA requires plaintiffs to bring an action "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Attorney Defendants argue that Plaintiffs' FDCPA claim is time-barred because the limitations period began when Mrs. Batista received the fourteen-day rent demand on February 18, 2025, and Plaintiffs did not file this action until March 30, 2026, more than a year later. Specifically, they argue that the Housing Court proceeding was just a further attempt to collect the same debt as the rent demand, and the limitations period began to run on the date of the initial attempt to collect that debt.

However, that is not what the FDCPA says. "The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened." Rotkiske v. Klemm, 589 U.S. 8, 13 (2019). The FDCPA prohibits, inter alia, "the false representation of - (A) the character, amount, or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(2), (10). This prohibition extends to attempts to collect a debt "based on actions taken in legal proceedings," including the initiation of a legal proceeding to recover an underlying debt. Cohen v. Rosicki, Rosicki & Assocs., P.C.cki & Assocs., P.C., 897 F.3d 75, 83-84 (2d Cir. 2018). Therefore, on a plain reading of the FDCPA, an FDCPA violation allegedly "occurred" on March 31, 2025, when the Attorney Defendants initiated a proceeding in Housing Court based on representations that Plaintiffs allege are false, deceptive, or misleading. And because Plaintiffs filed their lawsuit on March 27, 2026, within the one year statute of limitations for that violation, Plaintiffs' suit is timely.

***5** For the contrary proposition, the Attorney Defendants rely on Oliver v. U.S. Bancorp, 2015 WL 4111908 (S.D.N.Y. July 8, 2015) and similar district court cases. In Oliver, the district court held that "[t]he continued prosecution of a foreclosure or collection suit is not a continuing violation under the FDCPA -- if the same alleged misrepresentation is repeated in court filings, the claim accrues on the date of the initial representation." Id. at *2; see also Calka v. Kucker, Kraus & Bruh, LLP, 1998 WL 437151, at *3 (S.D.N.Y. Aug. 3, 1998) (same). In other words, Oliver held that where a debt collection suit is filed based on false or misleading representations, the only FDCPA violation occurred, and the statute of limitations began to run, when the suit was filed, regardless of how many times the same false or misleading representation is made in subsequent legal filings. According to Oliver, "[a] new FDCPA claim only arises if a new misrepresentation is alleged." Id.

But, to begin with, Oliver and the cases that rely on it are factually distinguishable. In those cases, the question was whether the statute of limitations began to run at the initial filing of the debt collection suit or whether subsequent legal filings in the same suit are separate violations of the FDCPA triggering their own statute of limitations period. By contrast, here it is undisputed that Plaintiffs filed their lawsuit within one year of when the Attorney Defendants initiated the debt collection suit. The Attorney Defendants want to extend Oliver's reasoning that "the claim accrues on the date of the initial representation," Oliver, 2015 WL 4111908 at *2, even further by holding that the statute of limitations began to run on the date the rent demand letter was sent to Plaintiffs.

More fundamentally, there is no statutory basis for the rule applied in Oliver, let alone for extending it. As explained, the FDCPA prohibits (among many other things) "[t]he use of any false representation to collect or attempt to collect a debt." 15 U.S.C. § 1692e(10) (emphasis added). And the one year statute of limitations runs "from the date on which the violation occurs." 15 U.S.C. § 1692k(d). There is no statutory basis for Oliver's

rule that a "new FDCPA claim only arises if a new misrepresentation is alleged," and the court cited none. Put another way, the FDCPA prohibits any false representation and there is no statutory basis for holding that a false representation made in a judicial proceeding to collect a debt is not a violation of the FDCPA just because the defendant already made the same false representation in the same case. Nor is there any statutory basis to hold that a false representation made to a court when initiating a debt collection lawsuit is not a violation of the FDCPA because the defendant already made the same false representation prior to initiating the debt collection lawsuit.

The Second Circuit has seemingly also rejected the reasoning in Oliver, albeit in a non-mandated summary order. In Weaver v. Boriskin, 751 Fed. App'x 96, 99 (2d Cir. 2018), the plaintiff alleged a number of FDCPA violations in a foreclosure action initiated in 2009. The plaintiff filed his federal FDCPA lawsuit in February 2016. Although the court concluded that, "as to any of the violations he alleged dating prior to February 2015, the action is barred by the statute of limitations," the court held that any allegations as to violations after that date were timely, including allegations that "the defendants maintained the fraudulent foreclosure action by filing an order to show cause, using connections to change the judge overseeing the foreclosure, and filing and prosecuting a motion for summary judgment." Id. In other words, although the foreclosure action was initiated in 2009, the Second Circuit recognized that the statute of limitations did not bar plaintiff's claim with respect to alleged FDCPA violations in legal filings that occurred between February 2015 and February 2016.

***6** Consistent with the FDCPA's text, moreover, numerous district courts have consistently held that repeated communications from a debt collector regarding the same debt may each constitute a separate FDCPA violation. See e.g., Ehrich v. RJM Acquisitions LLC, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009) ("[S]eparate communications that violate the FDCPA can create separate causes of action."); Evans v. Select Portfolio Servicing, Inc., 2020 WL 5848619, at *8 (E.D.N.Y. Sept. 30, 2020) (concluding that "each of the late-fee threats" sent to plaintiffs "could form the basis of a separate FDCPA violation"); Ross v. Cavalry Portfolio Servs., LLC, 701 F. Supp. 3d 211, 222 (E.D.N.Y. 2023) ("Courts in this district generally allow claims based on discrete violations that are within the statute of limitations, but bar those that occurred outside the period."); Sierra v. Foster & Garbus, 498 F. Supp. 3d 393, 395 (S.D.N.Y. 1999) ("This is not a case where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred.").

For these reasons, this Court finds that the statute of limitations does not bar Plaintiffs' FDCPA claim that the Attorney Defendants violated the FDCPA when they initiated the debt collection suit less than one year before Plaintiffs filed this federal lawsuit.

**2. Standing**

The Attorney Defendants also argue that Plaintiffs lack Article III standing to bring the FDCPA claim. To establish Article III standing, a plaintiff must demonstrate an injury in fact that is concrete, fairly traceable to the defendant's conduct, and redressable by the court. TransUnion LLC v. Ramirez, 594 U.S. 413, 417 (2021). The Attorney Defendants argue that Plaintiffs have failed to adequately allege an injury in fact. Not so. The Attorney Defendants conflate whether a plaintiff alleges an adequate concrete injury to have standing (a jurisdictional issue) with whether a plaintiff can recover statutory damages under the FDCPA (a merits issue).

Here, Plaintiffs allege that they incurred costs associated with defending the nonpayment proceeding, including "travel back and forth to Bronx Housing Court and to meetings and consultations with their attorneys," and that Mr. Batista lost wages due to missed work. FAC ¶ 124. These alleged economic injuries are sufficient to establish Article III standing. The Supreme Court has recognized that monetary harm constitutes a concrete injury-in-fact, see TransUnion 594 U.S. at 425, and the Second Circuit has recognized that out-of-pocket expenses and lost time may satisfy the concrete-injury requirement when they are a foreseeable consequence of the defendant's conduct, see Bohnak v. Marsh & McLennan Companies, Inc., 79 F.4th 276, 286 (2d Cir. 2023). Because Plaintiffs adequately allege monetary harm, the Court need not determine whether their additional allegations of emotional distress independently establish standing.

The Attorney Defendants' argument that Plaintiffs' expenses are too *de minimis* to establish Article III standing has no support. The only cases cited by Attorney Defendants concern whether plaintiffs are entitled to statutory damages under the FDCPA where the defendants' violations of the FDCPA were de *minimis.* See Campbell v. MBI Assocs., Inc., 98 F. Supp. 3d 568, 585 (E.D.N.Y. 2015) ("[T]he Court is aware of cases in

which the Second Circuit and courts in this district have refused to award statutory damages for de *minimis* or technical violations of FDCPA."). Whether a plaintiff has standing to bring an FDCPA suit and whether plaintiff will ultimately succeed in recovering statutory damages under the FDCPA are separate issues.

**B. State Law Claims**

Defendants argue that this Court should decline to exercise supplemental jurisdiction over the state law claims and, alternatively, that the state law claims should be dismissed for failure to state a claim. This Court will exercise supplemental jurisdiction over the state law claims and finds that Plaintiffs state plausible claims for relief.

**1. Jurisdiction**

***7** The Defendants argue that this Court should decline to exercise supplemental jurisdiction over the state law claims because Plaintiffs' GBL § 349 claim "raises a novel or complex issue of State law," 28 U.S.C. § 1967(c)(1), and because the state-law claims "substantially predominate[ ]" over the federal claim, id. § 1967(c)(2). ECF No. 28 at 10-11.

First, the GBL § 349 claim does not present novel or complex issues of state law. Defendants argue that there is a conflict between the First and Second Appellate Divisions over whether GBL § 349 claims can apply in landlord tenant contexts. See ECF No. 28 at 11. Defendants are correct that two First Appellate Division cases suggest that landlord tenant disputes are private and not subject to GBL § 349. See Aguaiza v. Vantage Properties, LLC, 69 A.D. 3d 422, 423 (N.Y. App. Div. 2010); Collazo v. Netherland Property Assets LLC, 155 A.D. 3d 538 (N.Y. App. Div. 2017). But these decisions contain virtually no reasoning, and as further explained below, are outweighed by overwhelming authority in New York state and federal courts applying GBL § 349 in landlord-tenant disputes. See e.g., Calixto v. A. Balsamo & Rosenblatt, P.C., 244 A.D.3d 674, 677 (N.Y. App. Div. 2025) (plaintiffs' allegations that defendants attempted to evict them by "suing them for significantly more than the amount owed and misrepresenting the amount owed to the court ... sufficiently pleaded deceptive conduct that was consumer oriented," therefore stating a claim under § 349).

Second, the state law claims do not substantially predominate over the FDCPA claim because the claims arise from the same alleged conduct and require consideration of overlapping facts. Thus, it is appropriate to exercise supplemental jurisdiction over them. See Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966)).

**2. Claim 2: GBL § 349 (against all Defendants)**

"To state a claim for a § 349 violation, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.' " Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 124 (2d Cir. 2017). "Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim." Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 897 (N.Y. 1999). However, the statute applies only to "consumer-oriented conduct" that "cause[s] actual, although not necessarily pecuniary, harm." Id.

Defendants argue that Plaintiffs have failed to adequately allege that Defendants' actions were deceptive and that Defendants' alleged conduct was not consumer-oriented within the scope of GBL § 349. Both arguments fail.

*a) Deception*

Defendants principally argue that the FAC fails to adequately plead deception because Plaintiffs "admit they knew what their rent was and what portion they were required to pay" and thus "cannot allege [that] they were misled" by the rent bills, rent demand, or Housing Court petition. ECF No. 51 at 2; see also ECF No. 45 at 19-21; ECF No. 47 at 6-8.

Defendants' argument misunderstands the applicable law. New York's Court of Appeals adopted "an objective definition of deceptive acts and practices" which asks "whether [the] representations or omissions [are] likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741,

745 (N.Y. 1995); see Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020) (same). Thus, whether Plaintiffs in this case were in fact misled is legally inapposite.

***8** Defendants do not argue that under New York's objective test their conduct was not deceptive. And if they had, it seems doubtful such an argument would have succeeded. Repeatedly sending tenants demands for rent and filing a housing court petition for rent that the tenant legally does not owe is at least plausibly deceptive to a reasonable consumer. See e.g. Villalba v. Houslanger & Assocs., PLLC, 2022 WL 900538 at *18 (E.D.N.Y. Mar. 28, 2022) (finding that defendants' maintenance of a debt collection suit "would likely have misled ... a reasonable consumer standing in [plaintiff's] shoes[ ] into believing the debt was still due" because a consumer or tenant is "entitled to reasonably assume that an attorney had conducted a meaningful review of the judgment and was representing that the claims ... were actionable"); Bryant v. Casco Bay Realty Ltd. P'ship, 2015 N.Y. Misc. LEXIS 13226, at *4 (N.Y. Sup. Ct., April 9, 2015) (holding that rent demands are misleading if they "create[ ] the impression that plaintiffs were required to pay more than what was actually owed as rent in order to avoid eviction").

In any case, Defendants' argument misconstrues the FAC's allegations. Plaintiffs specifically allege that they overpaid rent by $3,389.50 because of the Landlord Defendants' false rent ledgers. FAC ¶¶ 49-50. The reasonable inference to draw from this allegation is that Plaintiffs were in fact misled or deceived by the rent ledgers. See Twombly, 550 U.S. at 555-56.

*b) Consumer-oriented Conduct*

To state a claim under GBL § 349, the defendant's conduct must be "directed to consumers," which requires a plaintiff to "demonstrate that the acts or practices have a broader impact on consumers at large." Oswego Laborers' Loc. 214 Pension Fund, 647 N.E. 2d at 744; Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc., 171 N.E. 3d 1192, 1197 (N.Y. 2021) ("[A]n act or practice is consumer-oriented when it has a broader impact on consumers at large.") (citation modified), reargument denied, 175 N.E. 3d 909 (2021). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affects similarly situated consumers.' " Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010) (quoting Oswego Laborers' Loc. 214 Pension Fund, 647 N.E. 2d at 745) (emphasis added). Defendants argue Plaintiffs have failed to allege that Defendants engaged in consumer-oriented conduct for three reasons.

First, the Landlord Defendants argue that Plaintiffs' allegations that their conduct was systematic or part of a "pattern and practice" are entirely conclusory and that the Court need not accept formulaic recitations of a legal claim's elements. ECF No. 51 at 4-6 (citing Ashcroft, 556 U.S. at 678-79). But a plaintiff "need not show that the defendant committed the complained-of acts repeatedly -- either to the same plaintiff or to other consumers." Oswego Laborers' Loc. 214 Pension Fund, 647 N.E.2d at 744. In other words, pattern and practice is not a required element of the claim.

Moreover, Plaintiffs' allegations that the Landlord Defendants systematically overstated the rent due in rent ledgers, rent demand letters, and housing court proceedings are not conclusory or speculative. Rather, they are based on the deposition testimony of defendant Kleiner, who owns and controls DK & CK and is a shareholder in 1915 Realty and Phelan. See FAC ¶¶58-60, Ex. AK at 165-68, 220-21.[3] As alleged, then, the Landlord Defendants' conduct was not "unique to the parties." Oswego Laborers' Local 214 Pension Fund, 647 N.E.2d at 744, 745. At the very least, as alleged, the Landlord Defendants' conduct potentially has a broader impact on similarly situated consumers. Id. at 745; see also Wilson, 625 F.3d at 64.

***9** Similarly, the Attorney Defendants argue that their alleged conduct was not consumer oriented because the Housing Court petition against Plaintiffs was a one-off. ECF No. 45 at 18-19. However, Plaintiffs specifically allege three cases analogous to theirs, in which the Attorney Defendants filed proceedings in NY state housing court against Section 8 tenants for rent legally owed by NYCHA. FAC ¶¶ 97-113. "[T]he persistent filing of fraudulent debt collection lawsuits against New York consumers [ ] fall[s] within the scope of Section 349" because such "conduct did affect or could affect a larger group of New York consumers." *Hunter v. Palisades Acquisition CVI, LLC*, 2017 WL 5513636 at *8 (E.D.N.Y. Nov. 16, 2017) (citation modified).

Finally, the Attorney Defendants argue that Plaintiffs fail to adequately allege consumer-oriented conduct because, at bottom, this is a private contract dispute between a tenant, their landlord, and at times attorneys acting at the landlord's direction, which are outside the scope of GBL § 349. ECF No. 45 at 19; see Oswego Laborers' Loc. 214

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Pension Fund, 647 N.E.2d at 744 ("Private contract disputes ... [do] not fall within the ambit of the statute."). They cite a few cases suggesting that landlord tenant disputes categorically do not involve consumer oriented conduct subject to GBL § 349. See e.g. Aguaiza v. Vantage Properties, LLC, No. 105197/08, 2009 WL 1511791, at *5 (N.Y. Sup. Ct. May 21, 2009); Lautman v. 2800 Coyle St. Owners Corp., 2014 WL 2200909 (E.D.N.Y. May 23, 2014).

However, the weight of authority suggests that disputes between tenants and landlords can be consumer oriented and thus subject to GBL § 349. As discussed above, the conduct here is consumer-oriented under Court of Appeals precedent because it is not unique to the parties and at least potentially affects other similarly situated consumers -- that is, Section 8 tenants in buildings owned and operated by the Landlord Defendants. Thus, just last year in Calixto, the Appellate Division held that a tenant plaintiff adequately stated a claim under GBL § 349 against their landlord and attorneys representing the landlord. 244 A.D. 3d at 677; see also Lozano v. Grunberg, 195 A.D. 2d 308 (N.Y. App. Div. 1993) (reversing dismissal of a tenant's GBL § 349 claim against their landlord). As in this case, the tenant plaintiff alleged that the landlord "attempt[ed] to evict tenants by suing them for significantly more than the amount owed and misrepresenting the amount owed to the court." Calixto, 244 A.D. at 677. Similarly, a N.Y. state court held that GBL § 349 applied to a landlord's rent demands where the demands misrepresented the amount "actually owed as rent in order to avoid eviction." Bryant, 2015 N.Y. Misc. LEXIS 13226, at *4. And other federal district courts have concluded the same. See e.g., Sanchez v. Ehrlich, No. 16-cv-8677, 2018 WL 2084147, at *10 (S.D.N.Y. Mar. 29, 2018) ("An apartment dweller is a consumer of housing and may assert New York City consumer protection law.").

In sum, Plaintiffs state a plausible GBL § 349 claim by adequately alleging that Defendants' conduct would mislead a reasonable consumer and that Defendants' conduct was consumer oriented.

### 3. Claim 3: New York Judiciary Law § 487 (against the Attorney Defendants)

To establish a claim under Judiciary Law § 487, a plaintiff must allege that the defendant attorney (1) engaged in deceit or collusion, or consented to any deceit or collusion, and (2) acted with an intent to deceive the court or any party. Shad v. Zachter PLLC, 2024 U.S. Dist. LEXIS 40559, at *13-14 (S.D.N.Y. Mar. 7, 2024) (citing Ray v. Watnick, 182 F. Supp. 3d 23, 28 (S.D.N.Y. 2016)). Claims under § 487 require more than ordinary litigation misconduct and are generally limited to "egregious conduct or a chronic and extreme pattern of behavior" that causes damages. Id. (quoting Facebook, Inc. v. DLA Piper LLP (US), 134 A.D. 3d 610, 615 (N.Y. App. Div. 2015)). "[T]he purpose of Judiciary Law § 487(1) is to safeguard an attorney's special obligation of honesty and fair dealing in the course of litigation - a pillar of the profession." Bill Birds, Inc. v. Stein Law Firm, P.C., 149 N.E. 3d 888, 891 (N.Y. 2020). Section 487 "does not require a showing of justifiable reliance. In other words, liability under the statute does not depend on whether the court or party to whom the statement is made is actually misled by the attorney's intentional false statement." Id. Allegations of deceitful intent must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. See Bryant v. Silverman, 284 F. Supp. 3d 458, 469 (S.D.N.Y. 2018); see also Brake v. Slochowsky & Slochowsky, LLP, 504 F. Supp. 3d 103, 116 n.6 (E.D.N.Y. 2020).

***10** The Attorney Defendants argue that Plaintiffs do not plead a § 487 claim with sufficient particularity because (1) "[t]here is no specificity as to what was allegedly misrepresented ... to whom, and how this served to perpetrate a fraud or deceit," (2) the FAC does not allege deceitful intent, and (3) none of the alleged conduct is sufficiently extreme or egregious. ECF No. 51 at 22.

First, the FAC contains sufficient specificity as to what the Attorney Defendants allegedly misrepresented to whom, and where. The FAC alleges that the Attorney Defendants verified and prosecuted a Housing Court petition seeking rent arrears that the Attorney Defendants knew or should have known were not owed by the tenants. FAC ¶¶ 77-78. The FAC further alleges that the Attorney Defendants continued pursuing the proceeding even after receiving notice multiple times from Plaintiffs' counsel that the claimed arrears were not owed. FAC ¶¶ 82-91. Thus, the FAC clearly alleges what was misrepresented (the rent owed), to whom (the court and Plaintiffs), and where (the Housing Court petition).

Second, there are sufficient allegations as to the Attorney Defendants' intent to deceive. Under Rule 9(b), Plaintiffs may plead mental states generally so long as enough facts are alleged "that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006). They may do so by alleging "facts that constitute strong circumstantial evidence of

conscious misbehavior or recklessness." Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001). Plaintiffs have met that burden here: they allege that it was clear from the rent ledgers themselves that Plaintiffs did not owe the arrears their landlord sought, and they allege that the Attorney Defendants continued to prosecute the case despite clear evidence that Plaintiffs did not owe the rent. Moreover, they allege that the Attorney Defendants engaged in a broader practice of filing nonpayment proceedings against Section 8 tenants for rent that included withheld NYCHA subsidies. FAC ¶¶ 92-97. That is sufficient circumstantial evidence to conclude that the Attorney Defendants consciously misbehaved or at least acted recklessly. See Kalnit, 264 F.3d at 138-39 ("strong circumstantial evidence of conscious misbehavior or recklessness" suffices to plead fraudulent intent).

Consistent with this reasoning, the Appellate Division in Calixto held that plaintiffs adequately pleaded a § 487 claim by alleging that attorneys pursued eviction proceedings "despite having knowledge" that the plaintiffs did not owe the disputed rent arrears, and that "the attorney defendants were engaged in similar lawsuits against additional tenants." 244 A.D. 3d at 678. Similarly, Villalba v. Houslanger & Assocs., PLLC, concluded that a defendant's alleged "attempt[ ] to enforce a judgment against [plaintiff] knowing full well the invalidity of the judgment [it] sought to enforce" adequately alleged intent to deceive and stated a plausible claim under Judiciary Law § 487. No. 19-cv-4270, 2022 WL 900538, at *20 (E.D.N.Y. Mar. 28, 2022).

Therefore, Plaintiffs have adequately alleged a plausible Judiciary Law § 487 claim against the Attorney Defendants.

**4. Claim 4: Gross Negligence (against all Defendants)**

"Under New York law, 'a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.' " Sanchez, 2018 WL 2084147, at *6 (quoting Aegis Ins. Servs., Inc. v. 7 World Trade Co., 737 F.3d 166, 177 (2d Cir. 2013)). "A party is grossly negligent when it fails to exercise even slight care or slight diligence," Ryan v. IM Kapco, Inc., 88 A.D. 3d 682, 683 (N.Y. App. Div. 2011) (citation modified).

***11** Defendants argue that Plaintiffs' gross negligence claim must be dismissed for failure to allege conduct rising to the level of gross negligence; failure to allege that the Landlord Defendants owed Plaintiffs a duty; and failure to allege that Plaintiffs justifiably relied on Defendants' conduct.

*a) Plaintiffs adequately allege grossly negligent conduct*

The Attorney Defendants principally argue that Plaintiffs do not allege, as gross negligence requires, conduct that "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." Colnaghi, U.S.A. v. Jewelers Protection Servs., 611 N.E.2d 282, 284 (N.Y. 1993). This argument fails because it applies the wrong gross negligence standard.

Colnaghi applied a heightened gross negligence standard applicable only in cases in which the parties contractually agreed to exculpate each other from liability for ordinary negligence. In Colnaghi the parties had contractually "agree[d] to absolve [the defendant] from negligence claims." Colnaghi, 611 N.E. 2d at 284. The Court of Appeals explained that "in this context, gross negligence differs in kind, not only degree, from claims of ordinary negligence" and requires "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." Id.; accord Deutsche Lufthansa AG v. Boeing Co., 2007 U.S. Dist. Lexis 9519, at *7 (S.D.N.Y. Feb. 2, 2007) (requiring "deliberate or callous indifference to the rights of [Plaintiffs]" in a case where sophisticated parties had a contractual exculpatory clause covering negligence claims).

Colnaghi itself acknowledged it was imposing a higher standard than the normal gross negligence standard. As the Court of Appeals explained, conduct which does "not evince the recklessness necessary to abrogate [an] agreement to absolve [the parties] from negligence claims" may nevertheless be "suggestive of ... gross negligence as used elsewhere" where the parties did not agree to absolve each other of negligence claims. Id.

The normal gross negligence standard under New York law is that "a party is grossly negligent when it fails to exercise even slight care ... or slight diligence." Calixto, 244 A.D. 3d at 677. Calixto followed a long line of New York cases applying this gross negligence standard, dating back to at least 1926. See Ryan, 88 A.D. 3d at 683 (citing cases, including Dalton v. Hamilton Hotel Operating Co., 152 N.E. 268, 270 (N.Y. 1926)).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

The normal gross negligence standard as articulated in Calixto, and not the heightened Colnaghi standard, applies in this case because the parties in this case did not agree to absolve each other of liability for ordinary negligence.

Plaintiffs have adequately alleged that both the Landlord and Attorney Defendants failed to exercise even slight care or diligence and thus acted with gross negligence. The FAC alleges that Defendants as a matter of practice send Section 8 tenants rent ledgers and rent demand letters, and initiate housing court proceedings against Section 8 tenants, for rent that the tenants legally do not owe. FAC ¶¶ 53-54, 58-59, 64-70, 76, 78, 80, 91-96. Yet, the FAC alleges that even slight diligence or care would immediately reveal to any of the Defendants that they are trying to recover rent that the tenant legally does not owe. Id. That suffices to state a claim for gross negligence. See Calixto, 244 A.D. 3d at 677 (holding that plaintiff stated a gross negligence claim based on allegations that the landlord defendants sought rent that the plaintiff did not owe and that was not authorized by law, and where defendants allegedly failed to "exercise[ ] even the slightest amount of due diligence").

*b) Plaintiffs adequately allege that the Landlord Defendants owed Plaintiffs a duty*

***12** Contrary to the Landlord Defendants' argument, Plaintiffs adequately allege that the Landlord Defendants owe Plaintiffs a duty under GBL § 349. FAC ¶ 161. In New York, duty is a legal question reserved for judges and "where a statutory scheme is aimed at protecting a distinct class of persons from a particular harm, the statute may create an additional standard of care benefiting those persons." Sanchez, 2018 WL 2084147, at *7 (citing New York cases). As relevant here, GBL § 349 is explicitly designed to protect consumers from fraud and deception. Id. Thus, Calixto found that tenant plaintiffs stated a gross negligence claim against their landlords and building management relying on their duty to plaintiffs under GBL § 349. 244 A.D. 3d at 677-78.

The Landlord Defendants erroneously rely on a separate part of Calixto in which the court held that plaintiffs did not state a claim for "negligence per se" because "even if defendants violated [GBL] § 349, a cause of action alleging negligence per se against them for violation of that statute cannot lie, as the statute does not impose a specific duty on the defendants." Id. at 678-79. That is inapposite as to whether GBL § 349 creates a duty for purposes of a gross negligence claim, as Calixto itself demonstrates.

*c) Plaintiffs are not required to allege justifiable reliance*

Finally, the Landlord Defendants argue that a deceit-based gross negligence claim requires proof of justifiable reliance on the defendant's gross negligence and that Plaintiffs fail to adequately allege reliance. The Landlord Defendants are wrong. First, justifiable reliance is not an element of a gross negligence claim under NY state law. See Aegis Ins. Servs., Inc., 737 F.3d at 177 (the three elements of a gross negligence claim are duty, breach, and causation of plaintiffs' injury). Second, Plaintiffs do allege that they relied on the Landlord Defendants' misrepresentations of the rent owed insofar as Plaintiffs allege that the Landlord Defendants' misrepresentations caused Plaintiffs to overpay by $3,389.50. FAC ¶¶ 49-50. Third, the cases the Landlord Defendants cite required proof of justifiable reliance only because reliance was the only way those plaintiffs could prove defendants' allegedly fraudulent financial statements injured those plaintiffs. See Rotterdam Ventures, Inc. v. Ernst & Young LLP, 300 A.D. 2d 963, 965 (N.Y. App. Div. 2002); Water Street Leasehold LLC v. Deloitte & Touche LLP, 19 A.D. 3d 183, 185-86 (N.Y. App. Div. 2005). That is not the case here.

Thus, Plaintiffs have adequately alleged a plausible claim for gross negligence against the Landlord and Attorney Defendants.

**5. Dovid Kleiner's Individual Liability**

The Landlord Defendants argue that Defendant Kleiner cannot be held individually liable because all of Kleiner's alleged actions were taken as a corporate officer. ECF No. 47 at 14-15, ECF No. 51 at 6. Thus, the Landlord Defendants argue that Plaintiffs must allege sufficient facts to either pierce the corporate veil or establish that the corporate entities were merely Kleiner's alter ego.

The Landlord Defendants are wrong. In New York, "corporate officers and directors can be held individually liable for their own torts regardless of whether the corporate veil is pierced." In re R.N. Frieda Diamonds, Inc., 633 B.R. 190, 205 (S.D.N.Y. 2021); see also Bano v. Union Carbide Corp., 273 F.3d 120, 133 (2d Cir. 2001)

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

("Under New York law, 'a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable.' ") (citation omitted); Westminster Const. Co. v. Sherman, 554 N.Y.S. 2d 300, 301 (N.Y. App. Div. 1990) ("Corporate officers may be held personally liable for personal torts committed in the performance of their duties for their corporation," including negligence); Peguero v. 601 Realty Corp., 873 N.Y.S. 2d 17, 21 (N.Y. App. Div. 2009) ("The 'commission of a tort' doctrine permits personal liability to be imposed on a corporate officer for misfeasance or malfeasance, i.e., an affirmative tortious act."). Gross negligence is a tort, and thus no piercing of the corporate veil or alter ego theory is required to hold Kleiner individually responsible for his alleged gross negligence.

***13** This general principle has been applied to allow Plaintiffs to proceed with claims against individual corporate officers for violations under GBL § 349. See Guzman v. Mel S. Harris and Associates LLC, 16-cv-3499, 2018 WL 1665252 at *8 (S.D.N.Y. March 22, 2018) (holding that the sole stockholder and officer of a debt collection company could be held personally liable for violations of the FDCPA and GBL without piercing the corporate veil or alleging alter ego); Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685, 701 (S.D.N.Y. 2015) (holding that "Plaintiffs have sufficiently pleaded the individual Defendants' personal participation in deceptive business practices prohibited by the GBL"); Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc., 603 F. Supp. 339, 341 (S.D.N.Y. 1985) (declining to dismiss for failure to state a claim New York state law claims, including under GBL § 349, against individual corporate officers that allegedly "personally participated in the wrongful acts").

Therefore, Plaintiffs need not pierce the corporate veil or rely on an alter ego theory to hold Kleiner individually liable under GBL § 349 or for his alleged gross negligence.

**IV. Conclusion**

For the reasons set forth above, the motions to dismiss are hereby denied. The Clerk of Court is respectfully directed to close the motions at docket numbers 27, 44, and 46.

SO ORDERED.

**All Citations**

--- F.Supp.3d ----, 2026 WL 2905776

Footnotes

1 Plaintiffs allege that the total overcharge in rental arrears is $8,936.58, but that does not appear to account for the $788.55 they allegedly overpaid in December 2023 and January 2024.

2 The rent demand and petition sought slightly different amounts and cover partially overlapping months. The FAC does not explain why this is the case. See FAC ¶ 56.

3 Plaintiffs' Opposition also asserts that East 187 Realty LLC v. Yerlin Martinez et al., which is cited in the FAC as an example of the Attorney Defendants' practice of filing petitions in housing court misstating the rent owed, see FAC ¶¶ 108-113, involved a tenant in a building managed by DKCK. ECF No. 50 at 16. However, the FAC does not allege that the building is managed by DK & CK.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.